We'll now turn to Weitzman v. McFerrin, 19-1434. Okay, Ms. Moran, I think you're the appellant, are you ready to go? Yes, Your Honor, thank you very much. May it please the Court, my name is Elizabeth Moran. I represent the defendant appellant, Joshua McFerrin, LPN. This appeal centers on two related questions that pertain to Twombly-Iqbal pleading standards in the context of a motion to dismiss. First, what is the line between conclusions and facts, and what is the line between possibility and plausibility? That is, between allegations that are merely consistent with liability and those that plausibly allege that the defendant could be liable for the misconduct. The facts of this case are very straightforward. I'm sure the Court's familiar with them. This was a motion to dismiss. As you know, Nurse McFerrin was the last provider to see Mr. Weitzman before he was discharged from the detention center on December 12, 2015. All of the previous providers who had seen Mr. Weitzman had been dismissed by the Court on 12B6 motions. The allegations center on about three paragraphs of the First Amendment complaint relating to a December 9 kite by Mr. Weitzman and a December 11 nurse's note by Nurse McFerrin. Plaintiff alleges in the kite that he kited that he was almost completely blind in his right eye. Vision loss was starting in his left eye. He was supposed to have been seen back by the doctor within a week, and the nurses had scheduled him for three weeks out. Regarding the December 11 nurse's note, plaintiff alleges in the complaint that Nurse McFerrin wrote, Inmate walking around the pod in no apparent distress, not favoring one eye over the other. Now, plaintiff, the complaint does not allege that that is false. Next, plaintiff alleges the note says, Inmate states no complaints when asked. And reminded of doctor's appointment December 21, 2015, Inmate states that's fine. Those are the two things that Mr. Weitzman claims are false. But plaintiff does not allege what he did tell Nurse McFerrin on December 11. He only alleges what he would not have told Nurse McFerrin, that he would never have told the nurse he had no complaints because he was panicked about his eyesight, and that he was certainly not fine with a doctor's appointment on the 21st because he had repeatedly tried to tell medical staff that he was going to be dismissed or released from the detention center before then. So he's never alleged what he did tell. Is that in the complaint? Yes. That he had advised the staff that he was going to be released soon? The complaint states that he had repeatedly tried to tell medical staff that he was going to be released. There's no allegation that he actually told Nurse McFerrin that. So Mr. Weitzman has never alleged what he supposedly did tell Nurse McFerrin. In other words, what he alleges to be true that makes Nurse McFerrin's notes false. What about medical kites? Why can't we rely on those? Presumably, if you're writing a medical kite that is signaling that kind of distress about something so fundamental as your vision, you wouldn't keep that secret from the nurse. Isn't that a fair inference? Well, that is one inference, Your Honor. I think it needs to be borne in mind that this was he saw the nurse two days after he kited and one day before he knew he was going to be released. He does not claim that it is false that he was walking around the pod in no apparent distress, that he was not favoring one eye over the other. All he disputes is the nurse's note that he had no complaints when asked and he was fine with the doctor's appointment. Now, I would like to mention that certainly the facts of what Mr. Weitzman claims he told Nurse McFerrin are entirely at his disposal. He was there. He knew what he said. All he alleged is what he would not have said without alleging what he did say. So here we have his allegation that the note is false. But false is a conclusion. It's not a fact. And here it's the expression of a factual inference without stating the underlying facts on which the inference is based. And as this court held in the Kalik v. United Airlines case, which both parties have cited in their briefs, false is conclusory. The court held in that case that a plaintiff employee who alleged she was subject to false investigations and false criticisms and that her employer stated reasons for her termination were false and exaggerated, quote, are not entitled to the assumption of truth because they are entirely conclusory, unquote. And the court affirmed the 12B6 dismissal by the district court. And we've cited a number of other cases, district court cases that similarly hold that simply alleging that a defendant made a false report or fabricated information or was lying about a test result are conclusory and not entitled to they should be disregarded in determining whether the plaintiff has stated a deliberate indifference claim. Counsel, are there any allegations in the complaint showing that Nurse McFerrin was aware of his prior kites and complaints about his vision loss and rash to the medical staff? No, there are no allegations in the complaint that Nurse McFerrin had ever seen him before, had ever been informed of anything that was going on with him previously, or that he reviewed any of the medical records. Now, I note that it is… So, when you say he hadn't reviewed the medical records, I'm sorry to interrupt Judge Carson, but I want to get this fact clear. Presumably, there's a medical file on him and the nurse would have that. So, we would assume that all that information would be available to the nurse. You're saying there's no allegation that the nurse actually reviewed that.  Am I understanding correctly? Correct, Your Honor. Also, the complaint makes it clear that Mr. Weitzman… Nurse McFerrin came to the pod to see Mr. Weitzman and was not in the medical unit, so it's unclear whether he would have had any chart with him at that time. So, I do note that it was argued in the answer brief that Nurse McFerrin had reviewed medical records. It is nowhere in the complaint. So, moving on, without alleging any facts about what supposedly makes Nurse McFerrin's notes false, that false conclusion needs to be stripped out for purposes of evaluating McFerrin's 12B6 motion to dismiss. That's what the court held in the Kalik case. The conclusory allegation must be stricken and you just go with the well-plaid facts. So, here, what we have in the well-plaid facts is what plaintiff alleges was in his kite, and we know what that was, that he was losing vision in his right eye, starting in his left, was supposed to have seen the doctor in a week, and what plaintiff alleges about the December 11 note. Walking around the pod in no apparent distress, not favoring one eye, no complaints when asked, and fine with the December 1 doctor's appointment. So, is that really adequate response to someone saying, I'm going blind to show that they walk around without favoring one eye or the other? Wouldn't the fact that he's going blind, the kite says, I'm going blind, wouldn't that require some sort of further examination, checking vision or something like that? Or saying, gee, you're going blind, I better set you up with a doctor's visit right away. Your Honor, I think looking at all of his allegations, the fact that the December 9 kite and the December 11 note reflect two very different things, yes, they are very different, but that leaves only the possibility that the December 11 note is false. There are other explanations. First of all, I would point out that an inmate can't be compelled to accept medical treatment. So, here we have a situation where Mr. McFerrin is not, or Mr. Weitzman does not go to the medical unit, Nurse McFerrin comes to the pod, questions him, notes what he observes about him in terms of his walking and not favoring one eye, and writes that he's informed that the inmate has no complaints and is fine with his doctor's appointment. Is that a reasonable inference, given the allegation that the next day he rushed to a doctor's office, saw his personal physician that very next day, as soon as he was released, and then was immediately seen by a specialist, apparently? Yes, he was immediately, I'm sorry. That is what is alleged in the complaint. However, maybe I need to backtrack just a little bit here. Looking at the allegations of the complaint altogether, and without Mr. Weitzman ever alleging what he actually told Nurse McFerrin, there are a range of numerous inferences that explain why you could have two very different notes two days apart. Mr. Weitzman's symptoms might have temporarily improved. He might have been busy or irritated or tired and didn't want to talk with Nurse McFerrin when Nurse McFerrin came down to the pod to find him. Or he may have decided he didn't want to bother with Nurse McFerrin because he knew that he was getting out the very next day and would be able to go see a doctor whenever he wanted. Does the complaint allege what time this interaction took place between the two of them? It is not alleged the time of day, no. Okay. So looking at all the allegations of the complaint, he knew he was getting out, he was in fact released the very next day, he did not go to the medical unit, Nurse McFerrin came to the pod, and all of the allegations against the other defendants who have been dismissed, it could very well be that Mr. Weitzman became frustrated dealing with the medical staff at the detention facility, knew he was getting out the next day, and simply told Nurse McFerrin, I've got no complaints, yes, that appointment's fine. Why would he ride the kite then? If he were just resigned to defeat that he wasn't going to get any help, why ride a kite? I don't have an explanation for that, Your Honor. I think kites are very common, kites are very, very frequent in the medical system. He kited, as you can tell from the complaint, many times while he was there. He did know he was getting out. I mean, he sees Nurse McFerrin on the 11th, and he knows he's out of there the very next day. And did you say that he kited, that the last kite was two days before that? Before he saw Nurse McFerrin? There were previous kites. I think his last provider contact was on December 3rd with former defendant Nurse McCoy. No, I'm talking about the kite that Nurse McFerrin was seeing him about. I think you said that that one was sent two days before Nurse McFerrin talked to him. Yes, correct. The kite was dated December 9th. Okay, so when he sent that kite, he was three days from seeing his doctor as opposed to one day. He was three days from getting out. Right. And I would point out that, you know, although there are two days between December 9th and December 11th, there's no allegation that any delay in seeing Mr. Weitzman was in any way due to Nurse McFerrin. Is there any causation? Have you raised causation as a defense here that there's nothing Nurse McFerrin could have done that would have been better for Mr. Weitzman than what he actually got, seeing a specialist apparently the day he got out? Well, on a motion to dismiss, I mean, causation is kind of a factual question. It was certainly raised the issue that he was getting out the very next day. And, I mean, I think it's kind of a matter of general knowledge in the prison system or the detention system that you don't get, I mean, he was seen more quickly once he got out than could have happened within the detention facility system, even had Nurse McFerrin done something immediately. So I think I'm just about out of time. With that, I would ask that the court reverse the district court's denial of Nurse McFerrin's motion to dismiss and remand for dismissal of the first amended complaint. And I'll reserve my 24 seconds for rebuttal if it pleases the court. Thank you. Thank you. Mr. Fairhurst, did I pronounce your name correctly? You did. Thank you, Judge Hart. That is precisely correct. May it please the court, Michael Fairhurst appearing on behalf of the appellee, Todd Weitzman. On one point, I do agree with Ms. Moran, and it is this. The facts of the case are indeed straightforward. The facts clearly show that Mr. Weitzman reported to Nurse McFerrin that he was going blind in his right eye and was experiencing vision loss in his left eye as well. And yet Nurse McFerrin did nothing to— Okay, let me stop you there just so I'm aware of the evidence. So your evidence for that is the kite. That is part of the evidence. That's correct, Judge Carson, the December 9 kite. But that's not the only evidence. One thing that was not discussed during Ms. Moran's argument, which I think merits emphasis, is that after Mr. Weitzman saw Nurse McFerrin, he then submitted another kite. This is described in paragraph 49 of the complaint, where the complaint of yours, desperate to find another avenue by which to be seen by someone who would take his condition seriously, Mr. Weitzman filled out an inmate message form wherein he explained that, quote, I am literally blind, 90% in my right eye, and it got worse today. It's starting to happen in my left eye now, three days ago. I kited medical but want me to wait for my doctor's appointment. That's what it says in paragraph 49 of the complaint. That comes after paragraph 48, and the complaint proceeds sequentially. So what paragraph 49 is saying is after that visit with Nurse McFerrin, Mr. Weitzman was so disturbed by Nurse McFerrin's deliberately indifferent response to his stated concerns that he handed this kite to a deputy saying, looks like medical isn't going to address my situation, this medical emergency, or at least potential emergency. Can you please help me instead? So particularly when all plausible inferences are drawn in the light most favorable to Mr. Weitzman, it's not simply the December 9 kite demonstrating that he expressed concerns about near total blindness to Nurse McFerrin. It's also Mr. Weitzman's conduct after that visit with Nurse McFerrin where he didn't just, you know, sit on his hands and say, fine, I'll deal with this when I get out. Instead, he immediately filled out another kite and handed it to a deputy, hoping that security staff would handle this medical emergency that Nurse McFerrin had decided to effectively shrug his shoulders in response. Do we have a copy of that second kite? Well, the kite is described in paragraph 49 of the complaint. Yes. No, I know you said that, but we have a copy of the earlier kite. Do we have a copy of that kite? Your Honor, it's not part of the pleading, but it is a document that is in plaintiff's possession. I will say, though, just as I think a relevant follow up to that question, over plaintiff's opposition, discovery was stayed pending the resolution of this interlocutory appeal. So there is a probably significant universe of material out there that hasn't yet been exchanged because the question here is regarding the denial of a motion to dismiss. But yes, just to say to say it again, because it is an important point. The plaintiff's counsel does have a copy of the kite that Mr. Weitzman submitted to the deputy that I've described. And. Well, I kind of interrupted Judge Carson. Did you have anything? Go ahead. The complaint doesn't allege what Mr. Weitzman said to nurse McFerrin at the time of the visit. Am I correct about that? I, I respectfully take a slightly different position that it's it's manifest from from reading that the allegations as a whole that Mr. Weitzman expressed reiterated his his concerns about this profound vision loss that he was experiencing to nurse McFerrin. I mean, what Miss Moran has has done is she's she's taken certain paragraphs in isolation. What when what is appropriate here is to read the complaint as a whole, as this court undoubtedly is aware. And particularly when you read the allegations that in paragraphs 46 through 49 as a whole and draw all reasonable inferences flowing there from, then it's clear that Mr. Weitzman reported to nurse McFerrin during their visit that he was experiencing these serious concerns. But I also want to want to say this. Does he say that? Can you. Is there any language in the complaint that recites that what he told nurse McFerrin at the visit? What your honor, what I can tell you is this period of 47 you're referring to that describes the visit. What it does say in paragraph 47 regarding Mr. Weitzman is that he he, quote, tried to get the medical attention he needed through any avenue avenue possible. And certainly would not have told a nurse that he had no complaints. And so what that's saying is that Mr. Weitzman was indeed during his his encounter with nurse McFerrin trying to get the medical attention that he needed. But I also want to say that, frankly, it's a bit of a red herring to focus on exclusively anyway, what occurred during this encounter with nurse McFerrin, because the record is clear that nurse McFerrin was aware of the contents of that December 9 2015 kite when nurse McFerrin interacted with Mr. Weitzman. And that kite stated in no uncertain terms that Mr. Weitzman was going completely blind in his right eye and that the vision was also starting to deteriorate in his left eye. McFerrin hasn't disputed the fact that he was on notice about those complaints. Such complaints, I submit, clearly give rise to an obvious and serious medical need that necessitates a prompt response. Another fact asserted in the complaint is that Mr. Weitzman communicated to nurse McFerrin that he didn't have a doctor's appointment scheduled until December 21. What that means is that nurse McFerrin was aware not only of reported near total blindness, but also that there was no appointment scheduled for Mr. Weitzman for over a week after that time. To do nothing, knowing that Mr. Weitzman wasn't scheduled to see a specialist or another medical provider who could address these vision issues for so long is a quintessential example of deliberate indifference. And really, it's not all that different than the one this court confronted earlier this year in Chapman v. Santini at the 805 F Appendix 548 where the court held at page 558. In short, Mr. Chapman told Dr. Santini about a serious problem and the medical records that Dr. Santini acknowledged reviewing confirmed the problem. But still, Dr. Santini did nothing. That's a little different situation than you have here, though, because you don't have an allegation that the nurse had been referencing the medical records and was aware of the long history of the development of his eye problem. So those are actually two separate issues. First of all, the complaint does clearly appear that nurse McFerrin saw the December 9 kite. That kite had a report of near total blindness. And so on that particular issue, the December 9 kite, the complaint is crystal clear that McFerrin was aware of that complaint. And then the meeting occurs between the two of them on the 11th, right? Actually, Your Honor, this goes back to the issue of discovery having been stayed that that's not in the complaint. And the reason why it's not described in the complaint is because based on the records plaintiff has so far been able to obtain. There's actually a factual question about when precisely nurse McFerrin saw Mr. Weitzman. I know nurse McFerrin has taken the position that the visit occurred on December 11. And but but that's that's not consistent with the physical evidence that we've been able to obtain today. Or let me did anyone did anyone brief or raise that issue below? I'm excuse me. It was that issue briefed or discussed below. To my knowledge, it was not during oral argument. I know Miss Miranda has stated that the visit occurred on December 11. And a plaintiff actually takes no position on whether it was December 9, December 10 or December 11, because we simply haven't been able to get that question answered through discovery. But that is, you know, further evidence that this is it would be an unduly premature juncture to end a case. Given that the well-fledged allegations describing defendant McFerrin is deliberate and different. I want to go back to whatever of those dates it is. This is something that just troubles me and you may have a quick answer for it. Nurse McFerrin could not probably could not have gotten him in to see an ophthalmologist faster than he ended up getting and to see an ophthalmologist. Does that bear on the deliberate indifference? Yeah. In terms of liability, Judge Phillips, I submit the answer is no. That's the issue of causation is is played with specificity in the complaint. For example, in paragraph 57 of the complaint, it describes how Mr. Weitzman ultimately lost 70 percent of the vision in his right eye because of the dependent's deliberate indifference. Why do you say because of? Because defendant McFerrin can negotiate. Had defendant McFerrin come in, been appalled, got immediately on the telephone and started calling doctors, assuming the nurse had authority even to do that. It's not as though. Are you contending that he would the plaintiff would have less lost less vision that way? Yes. As the complaint says, for example, paragraph 58 had Mr. Weitzman received more timely care than his eyesight could have could have been saved. And let me just from defendant McFerrin or from the very start of this. I can see it from the very start of this. Sure. It's a progressive issue. So, you know, ultimately, this might come down to a damages question for a jury to assess in terms of saying how how much fault should we assign to McFerrin as opposed to others? You saw Mr. Weitzman earlier. But that's why I said earlier that when it comes to liability, causation is adequately pled. And moreover, it's not an issue that appellant even raised in their briefing, either before this court or before the court below. They've never taken issue with the causation question. And, you know, if they want to raise it at a later time after discovery and their motion for summary judgment, then, of course, it's their prerogative. But for present purposes, for purposes of evaluating the motion to dismiss. Number one, it wasn't even argued by appellant. Number two, it's alleged with specificity in the complaint. And let me just I'll describe how just as a practical matter, this could have played out to perhaps assuage any lingering concerns of this court regarding the causation question. I submit that even to a layperson, but particularly to a nurse, a person who's reporting near total blindness in one eye is experiencing a potential medical emergency. And the appropriate response in which you're notified of this potential emergency is to do something like send a person to the emergency room. Now, once in the emergency room, which is probably where Mr. Weitzman should have gone as soon as nurse McPheron was aware of his reported total blindness. Once in the emergency room, then they probably I'm speculating, but this is a reasonable inference, would have done blood tests. And as the complaint describes, once blood tests were done, Mr. Weitzman was diagnosed with ocular syphilis. And at that point, it was possible to treat his eye condition. And that's why he didn't lose all of his vision. It's 70 percent, which is certainly very serious in one eye, but it's not the same as total vision loss. So so you probably don't agree with this point that you're opposing counsels made, but I want you to assume it's true. Let's assume that we strip out the allegations that nurse McPheron said made any statements or said something that was false in his notes. If that's if we strip out the idea that the notes are false and we take into account the idea that we don't have any affirmative allegations as to what was said to nurse McPheron, aren't we left to consider nurse McPheron's version as as the factual basis? I respectfully disagree, I think, under the prevailing legal standard, that would be an inappropriate application of the law because of the requirement that all reasonable inferences must be made in favor of the plaintiff at this stage. But the problem is, is you you said it, you provided the notes as part of the complaint. And then. What you said about them was they were false, but didn't say what the truth was. And so if we strip out the conclusory allegation. Then we just have the notes. Even if I'm not saying that's fair or correct, or I'm just saying I'm just sort of working through it. I understand and I to address that that concern, I suggest, particularly focusing on paragraphs 46 and 47 of the complaint. What those paragraphs describe is the December 9 kite where Mr. Weitzman reports being almost completely blind in his right eye. That's a paragraph 46 and then at paragraph 47. There's a description of Nurse McPheron's signature on that kite. So those two paragraphs alone demonstrate clearly that Nurse McPheron was aware of Mr. Weitzman's reported near total blindness. You don't even need to consider the described interaction face to face between the two of them to conclude based on facts explicitly alleged in the complaint that Nurse McPheron was aware of reported almost total blindness in one eye. And for that reason alone, denial of defendant McPheron's motion to dismiss should be affirmed. But there are many additional reasons as well, which we discussed here today and are further discussed in the briefing. And unless the time is expired. Council member of the panel has any questions. Judge Carson and Judge Phillips. Thank you. And you have a few seconds left. Yes, Your Honor. Just to address the court's question about whether there are copies of any of these records in the record. We did submit, I believe, the December 9 kite, the December 11 note, and possibly the note to the deputy to the district court in support of our reply in support of motion to dismiss. They should be in the record. I'm not sure the district court considered them, but they should be in the record. I don't have a docket reference, however. You're specifically referencing the kite or message to the deputy that Mr. Weitzman reportedly gave after seeing Nurse McPheron. Is that right? I believe that is in there. I know the December 9 kite is and the December 11 note are. I believe the deputy message, which isn't clear when that was done or when that was submitted, is also. But I am not positive on that point. But that was with our reply in support of motion to dismiss. Thank you very much, counsel. Case is submitted. Counselor excused.